# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| KIERAN BEARD, | Case No. 4:25-cv-170 |
| Plaintiff, | Judge J. Philip Calabrese |
| v. | Magistrate Judge Jonathan D. Greenberg |
| BAJCO INTERNATIONAL, LLC, *et al.*, | |
| Defendants. | |

## OPINION AND ORDER

On behalf of himself and those similarly situated, Plaintiff Kieran Beard brings this class and collective action against Defendants for failure to pay minimum wage under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* and under numerous analogous State statutes and for unjust enrichment. Defendants move to dismiss. For the reasons that follow, the Court **GRANTS IN PART** the motion to dismiss.

## STATEMENT OF FACTS

Taking the facts alleged in the complaint as true and construing them in Plaintiff's favor, as the Court must in the current procedural posture, the complaint alleges the following facts.

### A. The Parties

Bajco International, LLC, Bajco Restaurant Holdings, LLC, Nadeem Bajwa, Malik Bajwa, and Faisal Bajwa refer to themselves collectively as the "Bajco Group." (ECF No. 1-1, ¶ 3, PageID #6.) The Bajco Group owns and operates "one of the largest Papa John's Pizza franchise chains," with over 100 locations across the United States.

(*Id.*, ¶ 28, PageID #9–10.) Since March 21, 2021, Kieran Beard has worked for the Bajco Group as a pizza delivery driver at the Bajco Group's Papa John's store located in Johnstown, Pennsylvania. (*Id.*, ¶ 167, PageID #28.) Plaintiff brings this class and collective action "on behalf of himself and similarly situated current and former delivery drivers nationwide" who are or were employed at the Bajco Group's Papa John's stores. (*Id.*, ¶¶ 8 & 113, PageID #7 & #21.)

    **B.    Job Duties**

At the Bajco Group's Papa John's store, Mr. Beard works "dual jobs—one inside the store, and one outside the store." (*Id.*, ¶ 168, PageID #28.) Inside, Mr. Beard's duties include "taking orders, prepping food, counting inventory, doing dishes, cashing customers out, and/or doing other tasks necessary for the operation of the restaurant." (*Id.*, ¶ 170, PageID #28.) Outside, he delivers food to customers. (*Id.*, ¶ 169, PageID #28.) Mr. Beard "regularly makes approximately 2 deliveries per hour during the hours he works on the road as a delivery driver" and "drives approximately 4 miles round trip per delivery." (*Id.*, ¶¶ 197–98, PageID #30.) Plaintiff alleges that he and similarly situated employees were "paid minimum wage or slightly above minimum wage for the hours they worked inside the restaurant." (*Id.*, ¶ 120, PageID #22.) According to the complaint, they were "paid minimum wage, slightly above minimum wage, or minimum wage minus a tip credit for the hours they worked while completing deliveries." (*Id.*, ¶ 119, PageID #22.) But Plaintiff alleges that Defendants regularly changed his pay category to the lower driver rate while still performing "inside duties." (*Id.*, ¶ 121.)

Plaintiff alleges that he "is required to maintain and pay for operable, safe, and legally compliant automobiles" and "an operable cellphone" to use for deliveries. (*Id.*, ¶¶ 177–78, PageID #28–29; *see also id.*, ¶126, PageID #22–23.) He alleges that he is "required to incur" job-related expenses, including automobile costs, depreciation, maintenance, parts, insurance, and financing, gas, cell phone service, GPS service, and "other equipment necessary for delivery drivers to complete their job duties." (*Id.*, ¶ 179, PageID #29; *see also id.*, ¶¶ 128–30, PageID #23.)

### C. Compensation

"At all relevant times," for the hours worked inside the restaurant, Mr. Beard and similarly situated delivery drivers "have been paid minimum wage or slightly above minimum wage." (*Id.*, ¶ 120, PageID #22.) Plaintiff admits that the Bajco Group paid him and similarly situated delivery drivers "at or close to minimum wage for all hours worked." (*Id.*, ¶ 237, PageID #38.) However, he also claims that the Bajco Group "regularly changed" his and similarly situated delivery drivers' pay category to the "lower on-the-road rate" while they were still in the store, completing their inside duties and waiting for delivery orders to be prepared. (*Id.*, ¶ 121, PageID #22.) For hours worked outside the restaurant delivering food, Mr. Beard was paid "approximately $8.00 per hour." (*Id.*, ¶ 175, PageID #28.)

### D. Reimbursement

Despite allegedly requiring delivery drivers to incur job-related automobile and cellphone expenses, the Bajco Group does not track or record the actual expenses incurred by their delivery drivers. (*Id.*, ¶¶ 130, 133 & 181, PageID #23 & #29.) The Bajco Group does not reimburse Mr. Beard for "his actual delivery-related expenses"

3

or for "the IRS standard mileage rate for the miles he drove while completing deliveries." (*Id.*, ¶¶ 194–95, PageID #30.) "In previous years," the Bajco Group reimbursed their delivery drivers for automobile expenses on a "commission basis" by giving the drivers a "percentage of the sale amount." (*Id.*, ¶ 132, PageID #23.) "[C]urrently, [they] reimburse their delivery drivers for automobile expenses "based on a set amount per mile or set amount per delivery." (*Id.*, ¶ 131, PageID #23.) The Bajco Group reimburses Mr. Beard for automobile expenses by "paying him $2.00 per delivery." (*Id.*, ¶ 176, PageID #28.) Plaintiff does not specify when the method for reimbursement changed or why. The current method allegedly results in "reimbursements that are less than the IRS standard business mileage rate for each mile driven." (*Id.*, ¶ 145, PageID #24.) According to the complaint, the Bajco Group does not reimburse their delivery drivers for cellphone expenses. (*Id.*, ¶ 129, PageID #23.)

Plaintiff alleges that the set reimbursement amount per delivery is inadequate to cover his actual expenses. (*Id.*, ¶ 199, PageID #30–31.) "As a result of unreimbursed automobile expenses and other job-related expenses," Plaintiff alleges that the Bajco Group "failed to pay him minimum wage as required by law." (*Id.*, ¶ 200, PageID #31.) Accordingly, he claims that he and similarly situated delivery drivers were "paid less than the minimum wage rate they were due in some or all workweeks." (*Id.*, ¶ 239, PageID #38.) The complaint pleads that, "[r]egardless of the precise amount of the reimbursements paid at any given point in time, Defendants' reimbursement formula has resulted in an unreasonable

4

underestimation" of expenses for delivery drivers. (*Id.*, ¶ 158, PageID #26.) But it contains no specific allegations about whether his expenses related to use of his vehicle or cellphone bring his pay below the minimum wage. (*Id.*, ¶¶ 173–98, PageID #28–30.) In one paragraph of the complaint, Plaintiff estimates that Defendants' per-delivery reimbursement of $2.00 falls below the IRS reimbursement rate per mile. (*Id.*, ¶ 199, PageID #30–31.)

## STATEMENT OF THE CASE

Plaintiff filed this class and collective action lawsuit in State court. (ECF No. 1-1.) Plaintiff brings a claim for failure to pay minimum wages in violation of the Fair Labor Standards Act (Claim 1). Plaintiff also brings nineteen State-law claims on behalf of the collective regarding failure to pay minimum wage and other wage-related violations: two Illinois claims (Claims 2 and 3); three Ohio claims (Claims 4, 5, and 6); one Indiana claim (Claim 7); two Pennsylvania claims (Claims 8 and 9); two Wisconsin claims (Claims 10 and 11); one Florida claim (Claim 12); two Kentucky claims (Claims 13 and 14); one Michigan claim (Claim 15); one Iowa claim (Claim 16); one Missouri claim (Claim 17); two Arizona claims (Claims 18 and 19); and a claim for unjust enrichment (Claim 20).

Defendants timely removed the action to federal court. (ECF No. 1.) They did so based on federal question jurisdiction, 28 U.S.C. § 1331. (*Id.*, ¶ 5, PageID #2.) Defendants did not invoke diversity jurisdiction; instead, they invoked supplemental jurisdiction over Plaintiff's State-law claims. (*Id.*, ¶ 6.) Then, they moved to dismiss. (ECF No. 5.)

## ANALYSIS

In any civil action, a complaint must "state[] a claim for relief that is plausible, when measured against the elements" of a claim. *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citing *Binno v. American Bar Ass'n*, 826 F.3d 338, 345–46 (6th Cir. 2016)). A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). To survive a motion to dismiss, a complaint must "raise a right to relief above the speculative level" into the "realm of plausible liability." *Twombly*, 550 U.S. at 555, 557 n.5.

When analyzing a complaint under this standard, the Court construes factual allegations in the light most favorable to the plaintiff, accepts them as true, and draws all reasonable inferences in the plaintiff's favor. *Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015). But a pleading must offer more than mere "labels and conclusions," because "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Nor is a court required to accept "[c]onclusory allegations or legal conclusions masquerading as factual allegations[.]" *Eidson v. Tennessee Dep't of Child.'s Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

Therefore, the Court must distinguish between "well-pled factual allegations," which must be treated as true, and "naked assertions," which need not be. *See Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (cleaned up); *see also, e.g.*, *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 375 (6th Cir. 2011) (determining that because some of the plaintiff's factual allegations were "not well-pleaded[,]" "their conclusory nature 'disentitles them to the presumption of truth'"). Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79.

## I. Fair Labor Standards Act (Claim 1)

The FLSA requires employers to pay employees a minimum wage of $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). This minimum wage must be paid to the employee "free and clear" of any direct or indirect "kick-back" to the employer or for the employer's benefit. 29 C.F.R. § 531.35. "The anti-kickback regulation prohibits any arrangement that tends to shift part of the employer's business expense to the employees to the extent that it reduces an employee's wage below the statutory minimum." *Hatmaker v. PJ Ohio, LLC*, No. 3:17-cv-146, 2019 WL 5725043, at *2 (S.D. Ohio Nov. 5, 2019) (cleaned up). "For example, if it is a requirement of the employer that the employee must provide 'tools of the trade' which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the [FLSA] in any workweek when the cost of such tools purchased by the employee cuts into the minimum . . . wages required to be paid [to] him under the [FLSA]." 29 C.F.R. § 531.35.

7

In the pizza delivery business, the vehicles of delivery drivers constitute such reimbursable "tools of the trade." *Waters v. Pizza to You, LLC.*, No. 3:19-cv-372, 2022 WL 3048376, at *1 (S.D. Ohio Aug. 2, 2022). "Accordingly, employers must ensure that they reimburse drivers for the costs related to those vehicles, to the extent that the failure to do so would drop the workers' wage below minimum wage." *Id.* But the FLSA "does not describe how to calculate those costs, and calculating them in the case of delivery drivers can be hard." *Parker v. Battle Creek Pizza, Inc.*, 95 F.4th 1009, 1017 (6th Cir. 2024).

Before the Sixth Circuit's decision in *Parker*, "a substantial difference of opinion exist[ed] regarding the correct valuation method" for reimbursement of delivery drivers' work-related expenses. *In re Bradford*, No. 22-0304, 2022 U.S. App. LEXIS 17739, at *3–4 (6th Cir. 2022). Previously, two valuation methods generally predominated throughout courts in this Circuit: the reasonable approximation method and the IRS business mileage rate method. *Id.* Under the reasonable approximation method, courts referred to 29 C.F.R § 778.217 to conclude that employers must "either reimburse drivers' actual costs or reimburse drivers using a reasonable approximation of the actual vehicle costs associated with making deliveries." *Bradford v. Team Pizza, Inc.*, 568 F. Supp. 3d 877, 882–83 (S.D. Ohio 2021). Alternatively, under the IRS business mileage rate method, courts gave deference to the Department of Labor Field Operations Handbook, which "states that when actual expenses have not been maintained, the IRS mileage rate is used to

8

determine minimum wage compliance." *Hatmaker*, 2019 WL 5725043, at *5; *see also Waters v. Pizza to You, LLC*, 538 F. Supp. 3d 785, 793–94 (S.D. Ohio 2021).

In *Parker*, the Sixth Circuit rejected the use of either of these methods to calculate an employee's reimbursement for providing "tools of the trade." 95 F.4th at 1018 (holding that neither "one-size-fits-all approximation of an employee's costs" appropriately reimburses employees under the FLSA). In rejecting the use of these methods, the Sixth Circuit relied on the language of the FLSA, which "entitles a minimum-wage employee to reimbursement of his *actual costs* incurred on his employer's behalf, but the statute requires neither more nor less than that." *Id.* (emphasis added).

Accordingly, "if an employer requires a minimum-wage employee to provide his own 'tools' for work, the employer must reimburse him for 100% of the cost of doing so." *Id.* at 1012. Nonetheless, the Sixth Circuit acknowledged that the calculation of actual expenses "is difficult . . . because the information necessary to make that calculation can be difficult or tedious to obtain." *Id.* at 1018. Despite this difficulty, "the risk of financial harm from borderline reimbursements . . . must fall solely on the employer." *Id.* at 1016.

Unlike *Parker*, which raised the calculation of expenses under the FLSA in two cases involving grants of partial summary judgment, this case stands at the pleading stage. Plaintiff alleges two separate violations of the Fair Labor Standards Act, which the Court addresses in turn.

### I.A. Reimbursement of Actual Expenses

Rule 8 requires " a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Here, Plaintiff repeatedly alleges that Defendants failed to pay delivery drivers minimum wage for the time they worked on the road making deliveries because drivers were not reimbursed for the use of their cars and cellphones. (ECF No. 1-1, ¶¶ 114 & 124–29, PageID #21–23.) Plaintiff alleges that Defendants do not reimburse delivery drivers for the actual expenses incurred (*id.*, ¶¶ 141 & 142, PageID #24), instead compensating them based on a set amount per mile or per delivery (*id.*, ¶ 131, PageID #23). "Regardless of the precise amount the reimbursements paid at any given point in time, Defendants' reimbursement formula has resulted in an unreasonable underestimation of delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of the minimum wage laws." (*Id.*, ¶ 158, PageID #26.)

At bottom, the complaint alleges that, as a result of Defendants' compensation practices, Plaintiff and those similarly situated "were deprived of minimum wages guaranteed to them." (*Id.*, ¶ 155, PageID #26.) But these allegations are conclusory. They simply assert a violation without making a showing of anything. Conceivably, Defendants underpaid delivery drivers in violation of the Act. But the allegations do not so show or otherwise comply with the longstanding Rule 8 pleading standard. *See Iqbal*, 556 U.S. at 679.

With respect to Mr. Beard in particular, the allegations are similar. Defendants pay him $8.00 per hour for making deliveries plus $2.00 per delivery. (ECF No. 1-1, ¶¶ 175 & 176, PageID #28.) He claims that, "[a]s a result of

10

unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Plaintiff minimum wage as required by law." (*Id.*, ¶ 200, PageID #31). Again, these conclusory allegations fail to plead a showing of a violation of the Fair Labor Standards Act.

The closest the complaint gets to meeting the pleading standard comes in two paragraphs in which Mr. Beard alleges that he regularly drives 4 miles round trip per delivery—an amount he estimates falls below the IRS mileage reimbursement rate. (*Id.*, ¶¶ 198 & 199, PageID #30–31.) His reasoning is as follows:

> In 2024, for example, the IRS business mileage reimbursement had been $0.67 per mile, which reasonably approximates the automobile expenses incurred delivering pizzas. . . . Considering Plaintiff estimates an average of 4 miles per delivery and he was reimbursed $2.00 per delivery, that results in a per mile rate of $0.50. Because the IRS rate business mileage rate is $0.67 per mile, Plaintiff estimates that Defendants under-reimbursed him by $0.17 per mile, $0.68 per delivery ($0.17 x 4 miles per delivery), and $1.02 per hour ($0.68 x 1.5 deliveries per hour on the road).

(*Id.*, ¶ 199.) This allegation and its reasoning fail to raise Plaintiff's claim for relief above the speculative level for two reasons.

*First*, this paragraph alleges only an under-reimbursement relative to the IRS mileage reimbursement rate, which in any given case might over- or under-compensate for use of a vehicle. Only one of those scenarios might result in an FLSA violation. Either is plausible here. Nor is there any way to know based on this allegation how unreimbursed cell phone expenses might affect the estimate. Even with those additional costs, Plaintiff might still receive compensation in excess of the minimum wage.

11

*Second*, as the Sixth Circuit held in *Parker*, the FLSA "entitles a minimum-wage employee to reimbursement of his *actual costs* incurred on his employer's behalf, but the statute requires neither more nor less than that." 95 F.4th at 1018. Ultimately, a plaintiff will have to prove a violation without using either of the methods for approximating those costs that the Sixth Circuit rejected. One of those methods involved use of IRS reimbursement rates. Although *Parker* did not speak to the pleading stage, it stands to reason that a party may not allege a violation based on a methodology that he may not use to carry his burden of proof at trial.

In any event, this allegation fails to make a showing of a violation. What the complaint lacks, conspicuously, is any non-conclusory allegation that Mr. Beard (or any person similarly situated) was paid below minimum wage while working as a delivery driver taking into account the per delivery reimbursement paid and the actual costs incurred in making the delivery. He might have been. Conceivably he was. But even the low bar of Rule 8 asks for more.

In many respects, the allegations in this case look like those in *Twombly*. There, the complaint alleged antitrust conspiracies. Because the allegations were alternatively consistent with either a conspiracy or lawful parallel conduct, the Supreme Court held that the complaint failed to meet the Rule 8 pleading standard. 550 U.S. at 556–57. Without more, parallel conduct does not suggest a conspiracy, and a conclusory allegation of an agreement did not raise the right to relief above the speculative level. So too here. Without more, Defendants' alleged failure to reimburse actual expenses of delivery drivers for the use of their vehicles, for

12

example, does not suggest that any person was actually paid below the minimum wage. Nor does his methodological estimation in paragraph 199 of the complaint (even if proper) raise an inference of an underpayment because that reimbursement might well leave his overall compensation above the minimum wage. Presumably, Plaintiff possesses the evidence to know one way or the other and to make a sufficient pleading at the outset. Or perhaps Plaintiff could develop evidence of this violation in discovery. But the price for obtaining discovery is a well-pleaded complaint that complies with the basic requirements of Rule 8. "[A] plaintiff must state a plausible claim before she can invoke a right to discovery. In other words, a plaintiff can open the door to discovery only if she first alleges 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence'" of an FLSA violation. *Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019) (quoting *Twombly*, 550 U.S. at 556).

### I.B. Dual Jobs

Second, Plaintiff claims that Defendants regularly changed his pay category to the lower driver rate while still performing "inside duties." (ECF No. 1-1, ¶ 121, PageID #22.) This allegation implies a violation of the FLSA, but the complaint does not clearly state a claim based on this alleged practice. To the extent Plaintiff intends to do so, the allegations of the complaint make clear that Plaintiff does not plead a violation of the FLSA. The complaint alleges that Mr. Beard and similarly situated employees were "paid minimum wage or slightly above minimum wage for the hours they worked inside the restaurant." (*Id.*, ¶ 120, PageID #22.) And the complaint alleges that he was paid $8.00 per hour for hours worked on the road making deliveries. (*Id.*, ¶ 175, PageID #28.) Because his pay exceeds the required hourly

13

rate, the complaint fails to state a claim under the Fairl Labor Standards Act based on the alleged practice of paying workers at the lower driver rate while performing inside duties.

## II. State-Law Claims (Claims 2–20)

As for the remaining State-law claims, Defendants argue that this Court should decline to exercise supplemental jurisdiction because these claims predominate over the FLSA claim and because the unjust enrichment claim is not amendable to class treatment. (ECF No. 5, PageID #85–89.) Plaintiff "does not oppose Defendants' request that the Court decline supplemental jurisdiction over [them]." (ECF No. 6, PageID #98.)

Under federal law "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III." 28 U.S.C. § 1367(a). This grant of jurisdiction brings all claims arising from a common nucleus of operative fact before the Court. *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 588 (6th Cir. 2016).

Even then, a court "may decline to exercise supplemental jurisdiction" in certain circumstances. 28 U.S.C. § 1367(c). Supplemental jurisdiction "is a doctrine of discretion." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966). To determine whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity[.]" *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *see also James v. Hampton*, 592 F. App'x 449, 462-

63 (6th Cir. 2015) (quoting *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1882 (6th Cir. 1993)). Section 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction where (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. When deciding whether to invoke supplemental jurisdiction, "a federal court should consider and weigh . . . the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (citing *Gibbs*, 383 U.S. at 726–27).

After reviewing the record in this matter, the Court declines to exercise its discretion to retain supplemental jurisdiction over Plaintiff's remaining claims under State law. The Court dismissed the claim over which Defendants invoked its original jurisdiction. Further, the remaining claims involve State laws over which the local courts have more direct and immediate experience.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's claim under the Fair Labor Standards Act and **DECLINES** to exercise supplemental jurisdiction over Plaintiff's State-law claims. Accordingly, the Court **DENIES AS MOOT** Plaintiff's motion for conditional certification (ECF No. 13) and **REMANDS** the case to the Mahoning County Court of Common Pleas.

**SO ORDERED.**

Dated:  February 12, 2026

                                   *[signature]*

                                   J. Philip Calabrese
                                   United States District Judge
                                   Northern District of Ohio